MEAGHER v WAYNE STATE UNIVERSITY

Docket Nos. 177139, 183282. Submitted September 3, 1996, at Detroit. Decided April 15, 1997, at 9:00 A.M. Leave to appeal sought.

Suzanne Meagher brought an action in the Wayne Circuit Court against Wayne State University and several university employees, individually and as agents of the university, alleging age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and violation of due process under 42 USC 1983, after her employment as a research assistant supervising graduate students was terminated and a younger person was hired to replace her. The court, William Leo Cahalan, J., denied a motion by the defendants for summary disposition of the due process claim. Judge Robert L. Ziolkowski succeeded Judge Cahalan and granted the defendants summary disposition of the due process claim, ruling that the written contract of employment had provided for employment that was terminable at will, and directed a jury verdict of no cause of action on the age discrimination claim, ruling that age had not been a factor in the decision to terminate employment. The court also awarded the defendants costs and attorney fees pursuant to MCL 600.2591(3)(a); MSA 27A.2591(3)(a), finding that the plaintiff's due process claim and the claim against three individual defendants had been frivolous. The plaintiff filed two appeals, and the defendants cross appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court did not err in directing a verdict of no cause of action with respect to the age discrimination claim. Although the plaintiff established a prima facie case of age discrimination by presenting evidence of membership in the protected class, discharge, qualification for the position, and replacement by a younger person, the plaintiff failed to prove by a preponderance of the evidence that the legitimate nondiscriminatory reasons for termination (poor supervision of a graduate student and poor handling of a research case) offered by the defendants were a mere pretext. The plaintiff failed to establish a prima facie case of disparate treatment because she did not show sufficiently that she was treated differently from employees of a different class for the same or similar conduct. With regard to the plaintiff's claim on appeal that the trial court improperly used the reduction in force standard to determine

whether the plaintiff had been discharged on the basis of her age, the trial court granted a directed verdict because it found no evidence that age was a factor in the decision to discharge, not because the plaintiff failed to make the additional proofs required in a case involving a reduction in work force.

2. The original judge's denial of the defendants' motion for summary disposition of the due process claim was not dispositive of the issue because the successor judge, under MCR 2.604, had the power to modify any order entered before the final judgment. The successor judge correctly granted summary disposition of the due process claim on the ground that employment had been terminable at will under the terms of the written employment contract. A public employee does not have a property right in continued employment where, as here, the position is held at the will of the employee's superiors and the employee has not been promised termination only for cause.

3. The plaintiff failed to preserve for appellate review the claim that certain records were improperly admitted into evidence under the hearsay exception for business records by not objecting at trial on the ground asserted on appeal.

4. The plaintiff's claim that the chief judge of the circuit court abused his discretion in upholding the trial judge's denial of the plaintiff's motion for disqualification of the trial judge cannot be considered because the plaintiff failed to provide a transcript of the chief judge's ruling. No error is apparent from the record of the trial judge's ruling on the motion, and disqualification for due process is not supported by evidence of a probability of actual bias that was too high to be tolerable under the Due Process Clause of the constitution.

5. The record does not support the plaintiff's claim that the trial judge was biased against her.

6. The trial court did not clearly err in finding that the plaintiff's due process claim and claim against three individual defendants were devoid of arguable legal merit so as to justify an award of costs and attorney fees to the defendants under MCL 600.2591(3)(a); MSA 27A.2591(3)(a). The trial court's finding with respect to the due process claim is not clearly erroneous in light of the plaintiff's written contract of employment providing for termination at will, and the finding with respect to the individual defendants is not clearly erroneous in the absence of a showing by the plaintiff of any factual or legal basis for the claims against those defendants.

7. The trial court did not have to await the outcome of the plaintiff's appeal of the grant of a directed verdict before granting the

defendants' motion for costs and attorney fees. The defendants won on the entire record at trial and therefore were the prevailing party for purposes of MCL 600.2591; MSA 27A.2591.

8. The plaintiff's appeal with regard to the due process claim was vexatious within the meaning of MCR 7.216(C)(1)(b) because the plaintiff's appellate brief violated court rules in exceeding the fifty-page limit on briefs and grossly disregarded the requirement of a fair presentation of the claim to this Court. The case must be remanded for an award to the defendants under MCR 7.216(C)(2) of their actual damages and expenses, including reasonable attorney fees incurred in defending against the plaintiff's appeal of the dismissal of the due process claim.

Affirmed and remanded.

1. MOTIONS AND ORDERS — DIRECTED VERDICTS — APPEAL.

A grant or denial of a motion for a directed verdict is reviewed de novo on appeal; the evidence is considered in the light most favorable to the nonmoving party; a directed verdict is appropriate only when no factual question exists upon which reasonable minds may differ.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AGE — INTENTIONAL DISCRIMINATION — DISPARATE TREATMENT.

Intentional discrimination and disparate treatment in employment involve the same theory of discrimination but different methods of proof (MCL 37.2202[1][a]; MSA 3.548[202][1][a]).

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AGE — DISCHARGE.

A prima facie case and rebuttable presumption of age discrimination with respect to termination of employment is established by a plaintiff who shows that the plaintiff is a member of the protected class, was discharged, was qualified for the position, and was replaced by a younger person; once a prima facie case is made, the defendant must produce evidence of a legitimate, nondiscriminatory reason for termination; if the defendant produces such evidence, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is a mere pretext (MCL 37.2202[1][a]; MSA 3.548[202][1][a]).

4. MASTER AND SERVANT — PUBLIC EMPLOYMENT — PROPERTY INTEREST — DUE PROCESS.

A public employee does not have a property interest in continued employment, and therefore does not have a cognizable claim under 42 USC 1983 upon termination of employment for deprivation of property without due process, where the position is held at the will

of the employee's superiors and the employee has not been promised termination only for just cause.

5. COSTS — ATTORNEY FEES — FRIVOLOUS CLAIMS.

A claim is frivolous and a trial court may tax costs on the claimant to reimburse the prevailing party for costs incurred in litigation where the claimant's primary purpose in initiating the action or asserting a defense was to harass, embarrass, or injure the prevailing party, the claimant had no reasonable basis to believe that the underlying facts were true, or the claimant's position was devoid of arguable legal merit; a trial court need not await the outcome of a claimant's appeal before awarding costs and attorney fees to a prevailing party (MCL 600.2591[3][a]; MSA 27A.2591[3][a]).

*Mary Anne M. Helveston*, for the plaintiff.

*Einheuser and Associates* (by *Michael Einheuser* and *Jonathan A. Green*), for the defendants.

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO*, JJ.

TAYLOR, J. This case arises out of the termination of plaintiff's employment at Wayne State University in 1991. In Docket No. 177139, plaintiff appeals as of right from a judgment of no cause of action resulting from a directed verdict, granted after a jury heard nine days of proofs, on her age discrimination claim, and the trial court's pretrial grant of summary disposition of her due process claim under 42 USC 1983. Defendants have filed a cross appeal, but limit their arguments to plaintiff's issues. In Docket No. 183282, plaintiff appeals as of right from the trial court's post-trial order awarding costs and attorney fees pursuant to MCL 600.2591; MSA 27A.2591. We affirm and remand for imposition of sanctions pursuant to MCR 7.216(C) (vexatious appeal).

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

Plaintiff commenced this action on July 1, 1992, seeking damages and reinstatement to her former position as a research assistant for the Parents and Children Together (PACT) Project in the Department of Sociology of the College of Liberal Arts at Wayne State University. PACT is funded pursuant to a contract between the university and the former Department of Social Services (DSS). PACT studies families (e.g., the characteristics of families having children in foster care) and provides services to families referred by the DSS. PACT's goal was to return children to families, although, in some cases, the children stayed in the family home rather than in foster care when the family was referred by the DSS to PACT. Graduate students are hired by PACT to serve as caseworkers for its in-home project for those families referred by the DSS to PACT. In addition to providing services, the graduate students were required to file regular reports on their assigned families.

Mary Jane Van Meter was the principal investigator for PACT at the time of plaintiff's discharge. Van Meter was ultimately responsible for everything that happened in PACT. Although Van Meter supervised the PACT research, there were several levels of supervision between Van Meter and the graduate students who were employed by PACT as caseworkers. As a research assistant in PACT, plaintiff was one of the direct supervisors of the graduate students. Plaintiff started working at PACT in 1977. For each of her fourteen years of employment, plaintiff executed written contracts setting forth the terms of her appointment as a research assistant. The contract language was modified over

the years as new contracts were executed. The last contract executed by plaintiff specified:

[R]enewal is to begin on October 1, 1990. This is a non-tenure track assignment and carries no presumption of continuing tenure. This renewal is subject to the pleasure of the President or his/her designee and contingent on the availability of funding. . . . The terms of this agreement may not be modified or altered by any oral statements or representations. This agreement may only be modified in writing, signed by a University official as authorized by Executive Order 85-1. . . . The continuation of the assignment is dependent upon your satisfactory performance and upon continuation of funding.

Plaintiff was discharged by Van Meter in May of 1991. Van Meter, who indicated that she was older than plaintiff, cited plaintiff's inadequate handling of a case in the in-home project (hereafter referred to as the Doe case) as grounds for the termination. The Doe case was being serviced by a graduate student subject to plaintiff's direct supervision. The Doe case was referred by the DSS to PACT on February 28, 1991. A graduate student was then assigned to provide in-home services for the family, which had one child residing outside the home as a temporary ward of the court and other children residing in the home with the mother. Among the stated goals set forth in the referral document was one to "improve mother's parenting skills and discipline technique. Help entire family deal with issues around sexual abuse. Help to become more secure when returning home transition."

It was undisputed that the graduate student assigned to the Doe case was experiencing personal difficulties during May of 1991, which, according to

plaintiff's own trial testimony, could probably be described as burnout. There was also trial evidence presented by the defense that information was acquired during PACT's handling of the case that should have been reported to the DSS so that an investigation could be made by the DSS regarding whether children in the home were at risk for sexual abuse.

On May 16, 1991, Van Meter was confronted by the mother in the Doe case about one of her daughters running away and Van Meter discussed this matter with the plaintiff. On May 21, 1991, Van Meter informed plaintiff that her employment was being terminated. After plaintiff was discharged, other supervisors of PACT shared plaintiff's former responsibilities. Plaintiff, who was forty-eight years old, was temporarily replaced with an individual of similar age. Finally, after posting and rewriting the qualifications for the position to require that the applicant have a master's degree in social work, a person significantly younger than the plaintiff was hired to permanently replace plaintiff.

Plaintiff's amended complaint alleged age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and denial of due process under 42 USC 1983. The complaint named Wayne State University and four individual defendants: David Adamany in his individual capacity and as president of Wayne State University; John Oliver in his individual capacity and as dean of the College of Liberal Arts; David Britt in his individual capacity and as the chairperson of the Department of Sociology; and Van Meter in her individual capacity and as an associate professor of sociology and principal investigator for PACT.

In ruling on pretrial motions, the court determined that the due process claim should be dismissed because plaintiff's employment was terminable at will. The case proceeded to trial solely on plaintiff's age discrimination claim.

II

Defendants moved for a directed verdict at the close of plaintiff's proofs. The court took the matter under advisement. After the close of defendants' proofs, the court granted a directed verdict in favor of defendants because there was no evidence that age was a factor in the decision to terminate plaintiff's employment. Plaintiff first contends that the trial court erred in granting a directed verdict on her age discrimination claim. Plaintiff asserts that the trial court applied the wrong standard when directing a verdict against her by utilizing a "reduction in force" standard. We find no error.

At the outset, we note some conflict in the case law regarding the standard of review that we are to apply. One line of authority holds that we should review a trial court's granting of a directed verdict under the deferential "abuse of discretion" standard. See, e.g., *Rasmussen v Louisville Ladder Co, Inc*, 211 Mich App 541, 545; 536 NW2d 221 (1995); *Michigan Microtech, Inc v Federated Publications, Inc*, 187 Mich App 178, 186-187; 466 NW2d 717 (1991). Another line of authority holds that we should utilize the same test as the trial court, which implies review de novo. See, e.g., *Matras v Amoco Oil Co*, 424 Mich 675, 681-682; 385 NW2d 586 (1986); *Haberkorn v Chrysler Corp*, 210 Mich App 354, 364; 533 NW2d 373 (1995); *Dep't of Transportation v McNabb*, 204 Mich App 674,

676; 516 NW2d 83 (1994); *Berryman v K mart Corp*, 193 Mich App 88, 91; 483 NW2d 642 (1992). Because we have found no Michigan Supreme Court opinion holding that a directed verdict is reviewed for an abuse of discretion, and because *Matras, supra*, indicates that an appellate court is to apply the same test that the trial court applies, we review the trial court's decision de novo and reject the cases that hold that we should review the trial court's decision for an abuse of discretion.

When evaluating a motion for a directed verdict, a court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party. *Locke v Pachtman*, 446 Mich 216, 223; 521 NW2d 786 (1994). Directed verdicts are appropriate only when no factual question exists upon which reasonable minds may differ. *Brisboy v Fibreboard Corp*, 429 Mich 540, 549; 418 NW2d 650 (1988).

Plaintiff's age discrimination claim is based upon that portion of the Civil Rights Act that provides that an "employer" shall not

> [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age. [MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).]

A plaintiff may attempt to prove age discrimination using different methods. *Wolff v Automobile Club of Michigan*, 194 Mich App 6, 11; 486 NW2d 75 (1992). As explained in *Reisman v Regents of Wayne State Univ*, 188 Mich App 526, 538-539; 470 NW2d 678 (1991):

> To prove intentional discrimination, the plaintiff must
> show that he was a member of the affected class, that he
> was discharged, and that the person who discharged him
> was predisposed to discriminate against persons in the
> affected class and actually acted on that disposition in dis-
> charging him. To prove disparate treatment, the plaintiff
> must show that the plaintiff was a member of the class enti-
> tled to protection under the act and that he was treated dif-
> ferently than persons of a different class for the same or
> similar conduct. A prima facie case of discrimination can
> also be made by showing a disparate effect. This theory
> requires a showing that a facially neutral employment prac-
> tice burdens a protected class of persons more harshly than
> others. [Citations omitted.]

This quote from *Reisman* seems to suggest that inten-
tional discrimination is different from disparate treat-
ment. That is not the case. As noted in *Lytle v Mal-
ady*, 209 Mich App 179, 185, n 1; 530 NW2d 135
(1995), lv gtd 451 Mich 920 (1996), many decisions
have confused these two theories of discrimination
with the differing methods of proving each theory.
Intentional discrimination is not a separate theory,
but rather another name for the disparate treatment
theory. *Id.* Or, as stated in *Brewster v Martin Mari-
etta Aluminum Sales, Inc*, 145 Mich App 641, 654;
378 NW2d 558 (1985), an alternative method of prov-
ing disparate treatment has been labeled as "inten-
tional discrimination." This is confirmed by the fact
that the jury instruction for disparate treatment pro-
vides "the discrimination must have been intentional."
SJI2d 105.02.

The general rule in an age discrimination case is
that, to survive a motion for a directed verdict, the
plaintiff must present evidence that, when viewed in a
light most favorable to the plaintiff, would permit a
reasonable jury to find that the plaintiff was dis-

charged because of age. *Matras, supra* at 682. When it is asserted that the plaintiff was discharged because of age, the individual's age need not be the only reason or main reason for discharge but must be one of the reasons that made a difference in determining whether to discharge the person. SJI2d 105.04. The question is whether age was a determining factor in the discharge. *Barnell v Taubman Co, Inc,* 203 Mich App 110, 121; 512 NW2d 13 (1993).

Although the inquiry is always the same, i.e., was the discharge "because of age," different approaches may be used to meet this burden of proof. *Matras, supra* at 684. Moreover, what suffices in one factual situation may be inadequate in another factual situation. *Id.* at 684; *Reisman, supra* at 540. One recognized approach is to utilize ordinary principles of proof by offering direct or indirect evidence relevant to and sufficiently probative of the issue of age discrimination. *Matras, supra* at 682-683. Another recognized approach follows a presumptive approach under federal law. While federal precedent interpreting the federal Civil Rights Act is not binding in Michigan, it is often used as guidance by Michigan courts. *Radtke v Everett,* 442 Mich 368, 382; 501 NW2d 155 (1993). The federal approach, which is taken from *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), has been used in Michigan to establish a prima facie case of age discrimination under different theories. See *Barnell, supra* at 120; *Lytle, supra* at 186.

Under the *McDonnell Douglas* approach, the threshold inquiry is whether the plaintiff established a prima facie case of discrimination. "Prima facie case" in this context does not mean that the plaintiff pro-

duced sufficient evidence to allow the case to go to a jury, but rather that the plaintiff produced enough evidence to create a rebuttable presumption of age discrimination. *Dixon v W W Grainger, Inc*, 168 Mich App 107, 115; 423 NW2d 580 (1987). When the plaintiff's claim is based on discharge from employment, the plaintiff establishes a prima facie case by showing (1) the plaintiff is a member of a protected class, (2) the plaintiff was discharged, (3) the plaintiff was qualified for the position, and (4) the plaintiff was replaced by a younger person. *Matras, supra* at 683. However, as the term "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes "a legally mandatory, rebuttable presumption." *O'Connor v Consolidated Coin Caterers Corp*, ___ US ___ ; 116 S Ct 1307; 134 L Ed 2d 433, 438 (1996), quoting *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 254, n 7; 101 S Ct 1089; 67 L Ed 2d 207 (1981). In an age discrimination case, such an inference can be drawn from the replacement of an older worker with a significantly younger worker. *Id.*

After a prima facie case is made out by the plaintiff, the second prong of the presumptive test provides that the burden of production shifts to the defendant, as opposed to the burden of persuasion that never shifts, to articulate some legitimate, nondiscriminatory reason for its actions. *Lytle, supra* at 186. If the defendant meets this burden of production, the third prong of the presumptive test requires that the plaintiff prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a mere pretext. *Featherly v Teledyne*

*Industries, Inc*, 194 Mich App 352, 358; 486 NW2d 361
(1992). A "mere pretext" may be proved (1) by show-
ing that the reason(s) had no basis in fact, (2) if the
reason(s) had a basis in fact, by showing that they
were not actual factors motivating the decision, or (3)
if the reason(s) were motivating factors, by showing
that they were jointly insufficient to justify the deci-
sion. *Dubey v Stroh Brewery Co*, 185 Mich App 561,
565-566; 462 NW2d 758 (1990). However, the sound-
ness of an employer's business judgment may not be
questioned as a means of showing pretext. *Id.* at 566.
Moreover, unfairness will not afford a plaintiff a rem-
edy unless the unfair treatment was because of age
discrimination. *Matras, supra* at 686.

A

The record shows that plaintiff relied upon, and the
trial court considered, the presumptive approach to
intentional discrimination in evaluating the motion for
a directed verdict, but ultimately granted a directed
verdict under the third prong of the presumptive
approach because plaintiff had no evidence to show
that the reason offered by Van Meter for the termina-
tion of plaintiff's employment was a mere pretext to
discriminate on the basis of age. Because the trial
court considered correct legal principles, the disposi-
tive question is whether the trial court correctly
found no factual issue to submit to the jury.

We begin by noting that there is arguable merit to
plaintiff's claim that she satisfied the first prong of
the presumptive approach because she presented evi-
dence that (1) she was forty-eight years old, (2) she
was discharged, (3) she was qualified for the position
in light of her fourteen-year history with PACT, and (4)

a person significantly younger was ultimately hired to replace her.

However, it is questionable whether plaintiff proved a logical nexus between Van Meter's alleged illegal discrimination and the hiring of plaintiff's permanent replacement because, viewed in a light most favorable to plaintiff, the proofs established that Van Meter did not select the permanent replacement. That decision was made by two other supervisory employees of PACT, and there was no evidence that Van Meter orchestrated a plan to have a younger person hired by those supervisory employees. Contrast *Rasheed v Chrysler Corp*, 445 Mich 109, 136; 517 NW2d 19 (1994) (where a supervisor involved in alleged harassment of an employee orchestrated a plan to discharge the employee, the supervisor's animosity could be imputed to company officials who ultimately made the decision to discharge the employee). Indeed, a more likely inference from plaintiff's proofs was that Van Meter wanted the applicant hired for plaintiff's position because she was a friend. Even then, however, there was evidence that Van Meter removed herself from the hiring process so that her friendship with the applicant would not influence the hiring decision. The only evidence indicating otherwise is the fact that a written letter of recommendation addressed to "whom it may concern," which was prepared by Van Meter for the applicant, was considered during the hiring process. Plaintiff did not prove that the letter was specifically written by Van Meter for plaintiff's position or present any evidence from which it could reasonably be inferred that the letter was written or used as part of a plan orchestrated by Van Meter to have her friend hired. If Van Meter

wanted her friend hired for any reason, Van Meter could have done so because, as the principal investigator for PACT, Van Meter had final authority (which she did not exercise) to decide who should be hired. However, taken in a light most favorable to plaintiff, we accept plaintiff's position that an inference of age discrimination, albeit a weak one, can be drawn from the facts of this case. Thus, we must decide whether sufficient evidence existed under the second and third prongs of the presumptive test to present a factual issue for the jury concerning whether plaintiff was discharged because of age.

With regard to the second prong of the presumptive test, defendants presented evidence of a legitimate, nondiscriminatory reason for the discharge, namely, Van Meter's dissatisfaction with plaintiff's supervision of a graduate student and, in particular, the manner in which the Doe case was handled. Therefore, under the third prong of the presumptive test, plaintiff had the burden of proving by a preponderance of the evidence that this legitimate reason was merely a pretext. *Barnell, supra* at 120-121.

In reviewing the third prong of the presumptive test, plaintiff relies on evidence that Van Meter placed her on probation before her discharge and argues that Van Meter was setting her up to be fired because of age. Van Meter put plaintiff on probation after an annual evaluation of plaintiff's job performance in February of 1991. However, the probationary period was lifted after four weeks, and plaintiff was then given a merit increase in wages.

Although there was some evidence that plaintiff's probation was subsequently referred to by Van Meter at and about the time that plaintiff was discharged,

significantly lacking from the proofs was evidence that the probation was a determining factor in Van Meter's decision to discharge plaintiff or that Van Meter was required to place plaintiff on probation before terminating her employment during May of 1991. Examining the evidence in a light most favorable to plaintiff and making all reasonable inferences in her favor, we do not find that plaintiff showed a logical nexus between the probation and the termination of employment.

In sum, plaintiff did not present evidence from which it could be inferred that probation was used by Van Meter as a "set up" to discharge her because of her age. At best, plaintiff proved that Van Meter put plaintiff on probation without investigating or documenting the complaints that Van Meter claimed prompted the probation decision. Plaintiff did not offer any evidence, except for her personal opinion that Van Meter had age animosity and the fact that her permanent replacement was younger, to support her claim that she was discharged because of age. The reason for the discharge had a basis in fact, although plaintiff disagreed with Van Meter's evaluation of her performance. Moreover, plaintiff did not establish that her handling of the Doe case and supervision of the graduate student assigned to that case did not motivate Van Meter's decision or that this was insufficient to justify the decision. Although the proofs may raise questions regarding the soundness of Van Meter's business judgment and whether she conducted an adequate investigation before exercising her judgment, this was insufficient to create a factual question for the jury concerning whether the reason offered by Van Meter for the discharge was a

mere pretext to discriminate against plaintiff on the basis of her age. Because plaintiff did not rebut Van Meter's legitimate, nondiscriminatory reason for the discharge, the trial court properly granted a directed verdict on plaintiff's claim of intentional age discrimination under the presumptive approach.

B

To make out a "prima facie" case of disparate treatment, plaintiff had to show that she was a member of a class entitled to protection under the statute and that she was treated differently than persons of a different class for the same or similar conduct. *Reisman, supra* at 538; *Dixon, supra* at 114. Although plaintiff argues that she was disparately treated by Van Meter, she gives only a cursory discussion of this claim. Plaintiff's argument is unclear regarding which employee she must be compared to for purposes of her disparate treatment theory. Because this Court need not address an issue that is given only cursory consideration, we could decline to consider this argument. *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n*, 159 Mich App 510, 520-521; 407 NW2d 31 (1987). We also note that plaintiff did not present evidence of any other supervisory employee at her level who was not discharged under the same or similar circumstances. The only arguable basis for a disparate treatment theory related to Van Meter's decision to place plaintiff on probation. Because plaintiff failed to establish a sufficient nexus between the discharge and the probation, the trial court properly rejected any disparate treatment theory in granting a directed verdict in favor of defendants.

C

We also reject plaintiff's claim that the trial court improperly applied the higher standard that applies to reduction in force in granting a directed verdict. It is true that plaintiffs who are discharged during reductions in force are required to adduce additional proofs in order to establish discrimination. See, e.g., *Plieth v St Raymond Church*, 210 Mich App 568, 574; 534 NW2d 164 (1995) (when an employer lays off employees for economic reasons, the employee bears a "greater burden of proof" in establishing discrimination); *Foehr v Republic Automotive Parts, Inc*, 212 Mich App 663, 671; 538 NW2d 420 (1995) (because the defendant did not terminate the plaintiff's employment for economic reasons, the plaintiff did not have to meet the "higher burden of proof"); *Reisman, supra* at 539 (the plaintiff has a "greater burden of proof" in work force reduction situation).[1] Use of phrases such as "greater burden of proof" are somewhat inapt because a plaintiff is not required to meet a higher burden of proof than the "preponderance of the evidence" standard. After a review of the record, we find that the trial court did not grant a directed verdict to defendants because plaintiff failed to make the requisite additional proofs necessary in a reduction in force case. Instead, it granted a directed verdict because it found no evidence that age was a fac-

---

[1] See further, Ludolph & Caliman, *Corporate reorganizations and age discrimination*, 74 Mich B J 1174-1178 (1995) (job elimination cases require a "heavier burden of proof"; a plaintiff has an "increased burden" of producing evidence that age was the determining factor in the adverse employment decision by providing additional evidence of age discrimination; courts are now imposing a "more stringent burden of proof" on plaintiffs alleging age discrimination in the context of corporate reorganizations or work force reductions).

tor in the decision to terminate plaintiff's employment. In any event, we have reviewed the trial court's ruling de novo under the appropriate law and find that defendants were entitled to a directed verdict.

### III

Plaintiff next argues that the trial court erred in limiting her potential damages to a twelve-month pay period on the basis that she had no reasonable expectation of renewing her contract. Because plaintiff has failed to argue the merits of this issue in her brief, we do not consider it. *People v Kent,* 194 Mich App 206, 210; 486 NW2d 110 (1992). In any event, any issue regarding damages is moot because we have found that the trial court properly granted a directed verdict in favor of defendants with regard to the age discrimination case.

### IV

Plaintiff next contends that the trial court erred in dismissing her due process claim before trial because this claim had previously survived a motion for summary disposition. We need not consider this argument because plaintiff has failed to brief the relevancy of her claim that summary disposition was previously denied. A mere statement of position is insufficient to bring an issue before this Court. *In re Toler,* 193 Mich App 474, 477; 484 NW2d 672 (1992). In any event, a prior denial of summary disposition is not dispositive of this issue because an order entered by a trial court may be modified before entry of the final judgment, and a successor judge, as in this case, is empowered to make a revision to reflect a more correct adjudication of the rights and liabilities of the litigants. See MCR 2.604; *Mikedis v Perfection Heat Treating Co,*

180 Mich App 189, 204; 446 NW2d 648 (1989). Thus, the dispositive question is only whether the successor judge correctly dismissed the due process claim against the individual defendants (Adamany, Oliver, Britt, and Van Meter) on the basis that plaintiff's deposition and the exhibits clearly established that plaintiff's employment was terminable at will. Plaintiff's appellate brief gives only cursory treatment of this issue because it lacks references to supporting proofs in the record. Hence, we could decline to consider this issue. *Community Nat'l Bank, supra* at 520-521. However, because we conclude later in this opinion that it is appropriate to award damages to defendants for having to defend against plaintiff's appeal of the due process claim, we address the merits of the dismissal of the due process claim.

Because the decision was, in substance, a grant of summary disposition under MCR 2.116(C)(10), we review the decision de novo to determine if the individual defendants were entitled to judgment as a matter of law. *G&A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994). Pursuant to the general rule that this Court's review is limited to the record presented to the trial court, *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990), we limit our review to the deposition testimony and exhibits filed or submitted when the successor judge rendered his decision. The motion should be granted only if there is no genuine issue of material fact. *Bourne v Farmers Ins Exchange*, 449 Mich 193, 197; 534 NW2d 491 (1995). However, disputed facts must be established by admissible evidence. *SSC Associates Ltd Partnership v General Retirement System of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991).

We find that plaintiff did not show a genuine issue of material fact for trial. The substance of plaintiff's claim was that she was denied a property interest in employment without due process for purposes of 42 USC 1983. Section 1983 is not itself a source of substantive rights; it merely provides a remedy for violations of rights guaranteed by the federal constitution and federal statutes. *York v Detroit (After Remand)*, 438 Mich 744, 757-758; 475 NW2d 346 (1991).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). See also *Perry v Sindermann*, 408 US 593, 602, n 7; 92 S Ct 2694; 33 L Ed 2d 570 (1972). A property right cannot be vested unless it is something more than an abstract need, desire, or unilateral expectation. Plaintiff must show a legitimate entitlement to the right. *W A Foote Memorial Hosp v Dep't of Public Health*, 210 Mich App 516, 524; 534 NW2d 206 (1995).

A property right may come from contract or statute, but a public employee does not have a property right in continued employment when the position is held at the will of the employee's superiors and the employee has not been promised termination only for just cause. *Manning v Hazel Park*, 202 Mich App 685, 694; 509 NW2d 874 (1993). A public employee may show a just-cause contract under ordinary contract principles (e.g., that an express agreement, oral or written, exists for just-cause employment) or under the "legitimate expectations" theory of *Toussaint v*

*Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980). See *Manning, supra*, and *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692; 513 NW2d 230 (1994). The latter theory, in its pure form, stemmed from the Supreme Court's common-law authority to recognize enforceable obligations that arise outside the operation of normal contract principles. *Rood v General Dynamics Corp*, 444 Mich 107, 118; 507 NW2d 591 (1993). Liability is nevertheless still premised on the parties' mutual assent to be bound. *Id*. Parties are free to bind themselves to whatever termination provisions they wish. *Thomas v John Deere Corp*, 205 Mich App 91; 517 NW2d 265 (1994). However, the "implied contract" theory of *Toussaint* may not be relied upon in Michigan when there is an express contract covering the same subject matter. *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991); *Wallace v Recorder's Court*, 207 Mich App 443, 447; 525 NW2d 481 (1994).

The fundamental error in plaintiff's claim that she can show a deprivation of a property right is her contention that a property right exists independent of the written contract for employment that she executed for the period commencing on October 1, 1990. Because the written contract covers the subject matter of termination and plaintiff was a party to this contract, her rights must be determined under the terms of this written contract. Hence, ordinary contract principles will be applied in determining if summary disposition was appropriate.

Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. *G&A Inc, supra* at 330.

If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. *SSC Associates Ltd Partnership, supra* at 363. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. *Allstate Ins Co v Goldwater,* 163 Mich App 646, 648; 415 NW2d 2 (1987). The language of a contract should be given its ordinary and plain meaning. *G&A Inc, supra* at 331. Parol evidence is not admissible to vary a contract that is clear and unambiguous, *In re Skotzke Estate,* 216 Mich App 247, 251; 548 NW2d 695 (1996), but may be admissible to prove the existence of an ambiguity and to clarify the meaning of an ambiguous contract. *Goodwin v Orson E Coe Pontiac, Inc,* 392 Mich 195, 209; 220 NW2d 664 (1974).

Plaintiff's written contract for the renewal to "begin on October 1, 1990," is arguably ambiguous with regard to the question whether it was intended to be a contract for an indefinite term or to be renewed annually as in prior years because, unlike prior contracts, no specific expiration date is stated. However, regardless of whether the written contract was for a definite or indefinite term, it is clear that plaintiff could be terminated at will within that term. In this regard, we note that, standing alone, the fact that the contract said "continuation of the assignment is dependent on satisfactory performance" suggests that plaintiff was employed under a satisfaction contract. A satisfaction contract is not a just-cause or good-cause contract. An employer may discharge under a satisfaction contract as long as the employer in good faith is dissatisfied with the employee's performance

or behavior. *Toussaint, supra* at 622-623. The employer is the sole judge of whether the person's job performance is satisfactory. *Mitchell v General Motors Acceptance Corp,* 176 Mich App 23, 32; 439 NW2d 261 (1989). However, read in conjunction with the phrase "this renewal is subject to the pleasure of the President or his/her designee," the contract admits of but one interpretation; namely, that the right to terminate at will was reserved by the university.

We also note that our interpretation of the contract language is consistent with plaintiff's own deposition testimony in this case. In fact, plaintiff's attorney informed the successor judge that plaintiff had testified that she was "at-will."

Having reviewed the grant of summary disposition de novo, we uphold the dismissal of the due process count because plaintiff did not show a genuine issue of material fact with regard to the question whether her employment could be terminated at will under the terms of her written employment contract. Indeed, the record establishes that plaintiff admitted that her employment was at-will. A public employee has no property right in continued employment when the position is held at will. *Manning, supra* at 694.

V

Plaintiff next contends that the trial court erred in ruling that it would allow defendants to introduce narrative reports regarding the Doe case from the PACT file at the jury trial on the age discrimination claim because they lacked inherent trustworthiness as business records pursuant to the hearsay exception for business records in MRE 803(6). We find that

plaintiff failed to preserve this issue for appeal because the specific objection made at trial was only to the authenticity of the proposed exhibit with regard to the time that it was done and who actually did the reports. The authenticity of a document and the hearsay problem presented by it are separate issues under the evidentiary rules. *People v Jenkins*, 450 Mich 249, 259-260; 537 NW2d 828 (1995). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be. MRE 901.

Because an objection on one ground is insufficient to preserve appellate attack on different grounds, we conclude that plaintiff's "trustworthiness" argument was not preserved for appeal. MRE 103(a)(1); *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 642; 534 NW2d 217 (1995); *Williams v Coleman*, 194 Mich App 606, 620; 488 NW2d 464 (1992). Further, no plain error is evident and no substantial rights were affected so as to warrant review of this claim. MRE 103(d). The trial court did not admit the exhibit for the purpose of proving the truthfulness of matters asserted in statements contained in the narrative reports (e.g., that a child in the Doe case had in fact suffered sexual abuse). The trial court's ruling was not dependent on when case narratives were placed in the PACT file. The evidence was admitted by the trial court, for what it was worth, on the basis of Van Meter's testimony that information in the PACT files can be relied upon for decision making. Plaintiff's substantial rights were not affected by the ruling

because, even if the case narratives were excluded, a directed verdict would still have been appropriate.

VI

Plaintiff next contends that the successor judge should have disqualified himself from hearing the case. The situation presented in this case was only that a tangential relationship existed between plaintiff's attorney and the successor judge in an unrelated lawsuit in which the successor judge was neither a party nor a decisionmaker. Further, plaintiff's attorney admitted below, when moving for disqualification of the successor judge, that she was no longer the attorney of record in the unrelated lawsuit. Plaintiff preserved this issue because it was decided by the successor judge and the record reflects that plaintiff sought and obtained review de novo by the chief judge in the circuit court. MCR 2.003(C)(3); *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 23; 436 NW2d 70 (1989). However, because the standard of review requires that this Court review the chief judge's decision for an abuse of discretion, *Cain v Dep't of Corrections*, 451 Mich 470, 503; 548 NW2d 210 (1996), and plaintiff has not filed the transcript of the chief judge's decision with this Court, we are unable to consider plaintiff's claim that disqualification should have been ordered pursuant to MCR 2.003. *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich App 300, 305; 486 NW2d 351 (1992); *Myers v Jarnac*, 189 Mich App 436, 444; 474 NW2d 302 (1991). On the basis of the trial court's own findings and the record that was provided, no error is apparent. In any event, MCR 2.003(B)(1) does not apply because plaintiff's motion was not based on actual bias or

prejudice. *Cain, supra* at 494. Further, on the basis of our review of the existing record, we find that plaintiff presented no facts to support a due process claim of disqualification. Judicial disqualification is required under the Due Process Clause only in the most extreme cases. *Cain, supra* at 498. Disqualification without a showing of actual bias is warranted in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerated. *Id.* at 499. The facts do not demonstrate an extreme case where the probability of actual bias was too high to be constitutionally tolerated.

VII

Plaintiff next contends that the trial court's conduct during the trial on the age discrimination claim demonstrated bias against the plaintiff. With one exception, plaintiff failed to preserve this claim because she did not object to the conduct. Further, plaintiff has not demonstrated any unusual circumstances warranting consideration of the unpreserved claims. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). The question whether the trial court displayed partiality before the jury is not a relevant consideration because the jury did not decide any issues. The only material question is whether plaintiff has established judicial bias as a basis for vacating the directed verdict. We conclude that she has not because plaintiff has not shown that the directed verdict was a product of judicial bias. To the contrary, the record reflects that plaintiff was given a full and fair opportunity to present her claim of age discrimination. Addressing specifically plain-

tiff's claim that she preserved the issue of judicial bias when she objected to the court advising defense counsel in a bench conference not to pursue a certain line of questioning, we note that the trial court's ruling reflects that it had cautioned defendants' attorney that pursuing certain questions could open the door to previously excluded evidence. This judicial ruling does not establish bias or prejudice. Fair judgment was not impossible on the record in this case. *Cain, supra* at 496. We find no basis for granting plaintiff any relief regarding this argument.

VIII

In Docket No. 183282, plaintiff contends that the trial court erred in awarding costs and attorney fees under MCL 600.2591; MSA 27A.2591 for bringing frivolous claims. A trial court's finding that a claim was frivolous will not be reversed unless it is clearly erroneous. *LaRose Market, Inc v Sylvan Center, Inc,* 209 Mich App 201, 210; 530 NW2d 505 (1995). A claim is frivolous when (1) the party's primary purpose in initiating the action or asserting a defense was to harass, embarrass, or injure the prevailing party, (2) the party had no reasonable basis to believe that the underlying facts were true, or (3) the party's position was devoid of arguable legal merit. MCL 600.2591(3)(a); MSA 27A.2591(3)(a). The circumstances existing at the time a case is commenced is of critical importance in determining if a lawsuit has a basis in fact or law. *Louya v William Beaumont Hosp,* 190 Mich App 151; 475 NW2d 434 (1991).

The trial court found that plaintiff's due process claim and her claim against three individual defendants (Adamany, Oliver, and Britt) were frivolous

because they were devoid of arguable legal merit and then awarded a total of $5,224.85 to the "defendants Wayne State University" for costs and attorney fees incurred in defending these matters. We find no clear error with respect to the trial court's finding that the claims were frivolous. In light of the evidence that an express written contract existed that covered the subject matter of termination and plaintiff's admission that she signed a contract that provided for employment terminable at will, the trial court did not clearly err in finding that the due process claim was devoid of arguable legal merit.

Further, plaintiff has not shown clear error with respect to the trial court's finding that the claim against three of the individual defendants was devoid of arguable legal merit. Specifically, plaintiff has not shown any factual or legal basis for filing a claim against these defendants for age discrimination in their individual or agency capacities. The mere fact that MCL 37.2201(a); MSA 3.548(201)(a) defines "employer" as including an agent does not automatically authorize a claim against an agent. MCL 37.2202; MSA 3.548(202) defines the prohibited acts of the "employer." It is one thing for an employee to file a claim against an employing entity (here, the university) under agency principles for the individual or collective acts of its agents that give rise to an inference of discriminatory practices or acts, see, e.g., *Champion v Nation Wide Security, Inc*, 450 Mich 702, 712; 545 NW2d 596 (1996), it is quite another thing for an employee to file a claim against a particular agent for prohibited acts. In the present case, plaintiff's presumptive approach to age discrimination focused on Van Meter's alleged discriminatory conduct in dis-

charging the plaintiff on the basis of the plaintiff's age. We do not find that plaintiff has cited any basis for filing claims against the other three individual defendants for Van Meter's alleged discriminatory conduct, even if there was some involvement in the matter (e.g., a posttermination request for an investigation of the reasons for the discharge) and one considers the critical time under *Louya, supra* at 163, of when the case was commenced. The trial court's finding that the claims were frivolous is not clearly erroneous.

IX

The other claim briefed by plaintiff in Docket No. 183282 is whether the trial court should have denied the motion for costs and attorney fees because she filed an appeal from the directed verdict. Relying on *Giannetti Bros Constr Co, Inc v Pontiac*, 152 Mich App 648; 394 NW2d 59 (1986), which addressed the issue of when a motion for mediation sanctions should be filed under former rule GCR 1963, 316 and *Keiser v Allstate Ins Co*, 195 Mich App 369; 491 NW2d 581 (1992), which upheld a trial court's grant of mediation sanctions to a defendant under MCR 2.403(O) after this Court reversed the trial court's denial of a directed verdict, plaintiff asserts that the trial court must await the outcome of an appeal in order to determine who is the "prevailing party" under MCL 600.2591; MSA 27A.2591. We disagree. A prevailing party means only "a party who wins on the entire record." MCL 600.2591(3)(b); MSA 27A.2591(3)(b). The trial court is not required to await the outcome of an appeal before determining the prevailing party. Cf. *Giannetti Bros, supra* at 657, n 2. In any event,

plaintiff was protected from having to pay the costs and attorney fees until this appeal was concluded under the stay she obtained pending conclusion of this appeal. Further, our resolution of this appeal renders this issue moot. Because we are affirming the judgment in Docket No. 177139, defendants are prevailing parties.

X

We next consider defendants' request in Docket No. 177139 for an award of costs and attorney fees incurred as a result of defending this appeal. Because defendants are the prevailing parties in Docket No. 177139, they may file a bill of costs pursuant to MCR 7.219.

Further, pursuant to MCR 7.216(C)(1)(b), we find that plaintiff's appeal with regard to the due process claim in Docket No. 177139 is vexatious because plaintiff's appellate brief violated the court rules and grossly disregarded the requirements of a fair presentation of the due process issue to this Court. In reaching this conclusion, we note that, notwithstanding a prior order of this Court striking plaintiff's initial appellate brief because it exceeded the fifty-page limit and directing that a brief that complies in all respects with MCR 7.212 be filed, plaintiff filed a brief that, in substance, violated the fifty-page limit of MCR 7.212(B) by attaching an exhibit referred to as "A-Due Process Argument Dismissed after Motion in Limine" to her brief. Arguments must be contained in the body of the brief. See MCR 7.212(C)(7).

Because plaintiff's appeal with regard to the due process claim was vexatious within the meaning of MCR 7.216(C)(1)(b), we remand to the trial court for

a determination of defendants' actual damages and expenses, including reasonable attorney fees incurred in defending against plaintiff's appeal from the dismissal of the due process claim in Docket No. 177139. Cf. *Dillion v DeNooyer Chevrolet Geo*, 217 Mich App 163, 170; 550 NW2d 846 (1996), and see MCR 7.216(C)(2).

Affirmed. Remanded to the trial court for an award of actual damages and expenses incurred in Docket No. 177139 consistent with this opinion. We do not retain jurisdiction.