*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFERY SPARLING, GREGORY SPARLING,
and WILLIAM C. SPARLING,

           Plaintiffs/Counter-Defendants-
           Appellants,

v

PORT BUILDERS, INC., JOHN R. SPARLING,
VICKI TURNBULL, and JUDITH MILLER,

           Defendants/Counter-Plaintiffs-
           Appellees.

UNPUBLISHED
April 16, 2019

No. 340851
St. Clair Circuit Court
LC No. 2016-000159-CR

JEFFERY SPARLING, GREGORY SPARLING,
and WILLIAM C. SPARLING,

           Plaintiffs/Counter-Defendants-
           Appellants,

v

PORT BUILDERS, INC., JOHN R. SPARLING,
VICKI TURNBULL, and JUDITH MILLER,

           Defendants/Counter-Plaintiffs-
           Appellees,

and

DELORES J. GAUVEY,

           Intervenor-Appellee.

No. 341923
St. Clair Circuit Court
LC No. 2016-000159-CR

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 340851, plaintiffs/counter-defendants Jeffrey Sparling, Gregory Sparling and William C. Sparling (plaintiffs) appeal by leave granted[1] the trial court orders denying their motion to appoint a third-party management company and granting defendants Port Builders, Inc., John Sparling, Vicki Turnbull, and Judith Miller's (defendants) motion to allow negotiations to proceed and consider offers from buyers to purchase assets of Port Builders, Inc., identified as Birchwood Estates and Birch Grove Plaza. In Docket No. 341923, the same plaintiffs appeal by leave granted[2] the trial court orders granting Delores J. Gauvey's motion to intervene and the motion by Gauvey and defendants to approve the sale of Greenacre Investments, LLC's interest in Birch Grove Plaza, and to appoint John Sparling as the agent of Greenacre to execute the sale documents. For the reasons stated in this opinion, in Docket No. 340851, we reverse and remand to the trial court, and in Docket No. 341923, we affirm the grant of intervention to Greenacre, but find the issue pertaining to the order of sale is moot.

## I. BASIC FACTS

This case arises from a series of disputes among siblings pertaining to the management and sale of family-owned business properties. The parties' parents, Walter Sparling and Mary Sparling, were developers, and they established Port Builders, Inc. in 1975. The Sparling family is comprised of eight children: John Sparling, Delores Gauvey, Judith Miller, Vicki Turnbull, Wayne Sparling, William Sparling, Jeffrey Sparling, and Gregory Sparling. Port Builders, Inc. is a family-owned business, with all of the outstanding shares in the company currently owned equally by the Sparling siblings. In 1992, Port Builders developed the Birch Grove Plaza (the Plaza). Port Builders also developed and owns a manufactured home community, identified as Birchwood Estates. Another family-owned business, relevant to this litigation, is Greenacre Investments, LLC, which is equally owned by all of the Sparling siblings, except William. Greenacre owns a 40% share of the Plaza.

In January 2016, plaintiffs filed a complaint seeking the removal of John Sparling and Vicki Turnbull from the Port Builders' board of directors, alleging that they had committed improper, fraudulent, and unauthorized acts. The case was consolidated with a separate action, and the parties have filed various motions seeking relief on a number of issues. Relevant to the present appeal, the parties engaged in court-ordered negotiations on July 17, 2017. Subsequently, on July 18, 2017, they placed the following agreement and terms on the record:

---

[1] *Sparling v Port Builders, Inc*, unpublished order of the Court of Appeals, entered March 9, 2018 (Docket No. 340851).

[2] *Sparling v Port Builders, Inc*, unpublished order of the Court of Appeals, entered May 29, 2018 (Docket No. 341923).

[B]y 11:59 p.m. on July 26, of 2017, Port Builders Board of Directors shall have received and closed all bids for the Port Builders' assets commonly known as Birchwood Estates and Birchgrove [sic] Plaza. For any offer to be considered, it must meet or exceed the price of ten million-dollars and be a cash offer for both Birchwood Estates and the Birchgrove [sic] Plaza.

Number two, from the closing proceeds, Port Builders shall pay to Jeff Sparling, Greg Sparling and William C. Sparling collectively an amount of $85,000 as reimbursement for legal expenses.

Number three, upon acceptance of an offer by Port Builders, the office building shall be appraised by Lou Petho of Midwest Appraisal. At closing, half of the fair market value shall be paid to Sparling Realty. The remaining one-half shall remain with Port Builders. If for whatever reason the transaction and the sale of Birchwood Estates and Birchgrove [sic] Plaza is not consummated, Port Builders' agreement to pay this one-half share to Sparling Realty shall not be construed as an admission by Port Builders that Sparling Realty has an interest in the office.

Effective immediately . . . the Port Builders' Board of Directors only shall assume all responsibility for management of Port Builders. In the event that no binding agreement for sale of Port Builder assets known as Birchwood Estates and Birchgrove [sic] Plaza is not consummated by July 29th of 2017 or in the event that no closing for these assets is completed, then the Port Builders Board of Directors shall hire a third-party management company within 14 days or soon thereafter as practical.

Number five, upon closing of the sale of Birchwood Estates and Birchwood [sic] Plaza, all lawsuits will be dismissed with prejudice and without costs. In the interim, all legal proceedings, including the appeal, shall be stayed.

Finally . . . the attorneys for the parties shall personally provide a status report to [the trial court] on or before July 31, 2017 to advise whether an offer has been received and accepted.

And I should state . . . as it relates to number one, that the Port Builders Board of Directors are to sign the highest . . . the highest and best offer which meets or exceeds that ten million-dollar agree upon floor for the price.

On August 28, 2017, the parties appeared before the trial court to address modifications and suggested language for inclusion in the proposed written order. Thereafter, on August 31, 2017, the court entered a written order memorizing the settlement agreement.

The record reflects that two offers were received before the July 29, 2017 deadline: Legacy Communications, LLC (Legacy) made an offer to purchase the Plaza and Birchwood for $11.5 million, and Parkside Investment Group (Parkside) made a separate offer to purchase the properties for $10.5 million. On July 29, 2017, Port Builders accepted the offer from Legacy and executed a purchase agreement; however, for reasons unrelated to the issues raised on appeal,

Legacy terminated the agreement before closing. Despite the failure to close, Legacy stated that it was still interested in purchasing the properties for $10.75 million, and Parkside's offer of $10.5 million was still valid.

On October 2, 2017, defendants filed a motion with the trial court, seeking permission to continue negotiations with Legacy and to proceed with consideration of the offer by Parkside. Plaintiffs, however, asserted that such an action was inconsistent with the August 2017 settlement agreement, and instead filed a motion requesting that the court order Port Builders to retain a third-party management company. Following a hearing on the parties' motions, the court denied plaintiffs' motion for the appointment of a third-party management company and granted defendants' motion to continue negotiations and sell the properties. The appeal in Docket No. 340851 follows that decision.

While the appeal in Docket No. 340851 was pending, Port Builders reached an agreement to sell the properties to Parkside. On December 4, 2017, defendants filed a motion seeking permission for John Sparling to execute the sale documents for the Plaza on behalf of Greenacre, which owns 40% of the Plaza. The court denied the motion.

On December 21, 2017, Gauvey, as an individual and as a member of Greenacre, filed an emergency motion seeking permission to intervene in the Port Builders' litigation. Concurrently, she filed a motion requesting that the trial court approve of the sale of Greenacre's interest in the Plaza and that the court permit John Sparling to execute the sale documents on Greenacre's behalf. The court granted both motions, and the appeal in Docket No. 341923 follows that decision.

## II.  SETTLEMENT AGREEMENT

### A.  STANDARD OF REVIEW

Plaintiffs argue that the trial court's order permitting the sale of the properties to continue and denying their motion for the appointment of a third-party management company was erroneous because it was contrary to the plain language of the August 2017 settlement agreement. This Court reviews de novo "[q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

### B.  ANALYSIS

In August 2017, the parties' settlement agreement was memorialized by a written court order entered with the consent of the parties. "Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts. Like contracts, stipulated orders are agreements reached by and between the parties." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000) (citation omitted). Therefore, we must evaluate the settlement agreement using the rules of construction applicable to contracts. In *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 547; 904 NW2d 192 (2017), this Court explained:

"Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Meagher v Wayne State Univ*, 222 Mich App 700, 721; 565 NW2d 401 (1997). . . . . "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Id*. Clear and unambiguous contractual language must be enforced as written. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010). The judiciary is not authorized to rewrite contracts. This Court has repeatedly held that the straightforward language of a contract must control. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 52; 664 NW2d 776 (2003) ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."); *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) ("The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.").

"The judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

In relevant part, the settlement agreement, as memorialized in the court order, provides:

IT IS HEREBY ORDERED that by 11:59 p.m. on July 26, 2017, the Board of Directors shall have received and closed all bids for the Port Builders' assets commonly known as Birchwood Estates and Birch Grove Plaza. To be considered as an offer, the offer must meet or exceed the minimum price of $10 Million net cash for both Birchwood Estates and Birch Grove Plaza. The Board of Directors shall then accept the highest and best offer within 3 days or July 29, 2017.

* * *

IT IS FURTHER ORDERED that effective immediately, the Board of Directors only shall assume all management responsibilities for Port Builders. *In the event that no binding agreement for the sale of Port Builders' assets is consummated by July 29, 2017, or in the event no closing is completed, then the Board of Directors shall hire a third-party management company within 14 days or as soon thereafter as practical.* [Emphasis added.]

Under the plain language of the settlement agreement, Port Builders' board of directors had until July 29, 2017 to enter into a binding agreement to sell the assets. In the event there was no binding agreement for the sale, "or in the event no closing is completed," then the board of directors was required to hire a third-party management company within 14 days or as soon thereafter as practical. The settlement agreement contained no terms allowing renewed negotiations or consideration of additional offers if the agreed-to sale fell through. Because the

agreed-to sale with Legacy did not close, Port Builders' board of directors was required to hire a third-party management company. Accordingly, the trial court erred by denying plaintiffs' motion to require appointment of a third-party management company and by allowing defendants renewed opportunities to sell the assets.

Nevertheless, defendants contend that under the agreement there were two conditions precedent to the appointment of a management company: the "purchase agreement condition" and the "closing condition." They assert that the "purchase agreement condition" was satisfied because a binding agreement for the sale of the properties was consummated by July 29, 2017 when Port Builders entered into a purchase agreement with Legacy. They assert that the "closing condition" remains "open and capable of completion." Specifically, defendants claim that the settlement agreement only requires that a closing be completed, but does not require that the closing be with the same purchaser that signed a binding purchase agreement by July 29, 2017. They further argue that no deadline exists for when the property closing must occur. In other words, defendants suggest that so long as a closing with someone at some point in time can occur on the properties, then the closing condition can still be satisfied. Defendants interpretation, however, renders nugatory the requirement that a binding purchase agreement be entered by July 29, 2017. Under their interpretation, the identified agreement deadline is wholly without meaning because the parties would have an unfettered opportunity to continue to pursue sales of the properties even after the deadline. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003) (citations omitted) ("[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.").

For these reasons, we conclude that the trial court erred by ignoring the plain language of the settlement agreement and ordering that the sale negotiations proceed. We, therefore, reverse the courts orders granting the motion to continue the sale and denying the motion for the appointment of a third-party management company. On remand, the court shall order the appointment of a third-party management company.

### III. MOTION TO INTERVENE

### A. STANDARD OF REVIEW

Plaintiffs next argue that the trial court erred by permitting Greenacre to intervene and by permitting the sale of Greenacre's interest in the Plaza to proceed.[3] "This Court reviews for

---

[3] Our resolution of the issue in Docket No. 340851 renders moot the second issue raised in Docket No. 341923. An issue is moot if "a subsequent event makes it impossible for this Court to grant relief." *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018). The purchase agreement for the sale of Greenacre's 40% interest in the Plaza was fully subsumed within the purchase agreement for the sale of Birchwood Estates and for the 60% interest in the Plaza owned by Portside Builders. Because Portside Builders must appoint a third-party management company and cannot sell its interest in the properties under the present

abuse of discretion a trial court's decision on a motion to intervene." *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 761; 630 NW2d 646 (2001) (quotation marks and citation omitted).

## B. ANALYSIS

MCR 2.209 addresses motions to intervene, and it "should be liberally construed to allow intervention when the applicant's interest otherwise may be inadequately represented." *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). A party may intervene by right:

> (3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. [MCR 2.209(A)(3).]

It is recognized that MCR 2.209 "should be liberally construed to allow intervention when the applicant's interest otherwise may be inadequately represented." *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). In addition, MCR 2.205(A) provides that "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants[.]" The purpose of MCR 2.205(A) is "to prevent the splitting of causes of action and to ensure that all parties having a real interest in the litigation are present." *Mason Co v Dep't of Community Health*, 293 Mich App 462, 489; 820 NW2d 192 (2011), lv den 490 Mich 1005 (2012). Further, pursuant to MCR 2.207: "Parties may be added or dropped by order of the court on motion of a party or on the court's own initiative at any stage of the action and on terms that are just." In this case, because Greenacre holds a 40% interest in the Plaza, any sale of the Plaza necessitated the participation and approval of Greenacre to proceed and to convey valid title. Therefore, it is clear that Greenacre is a necessary party to effectuate the sale of the Plaza.

On appeal, plaintiffs suggest that intervention in this case was improper because, rather than intervening to *protect* an asset, Greenacre intervened to dispose of an asset. Such an argument misconstrues the interest protected by intervention in this case. Greenacre's rights of ownership to the property and compensation from its sale constitute the interest protected by its intervention. Accordingly, as required by MCR 2.209(A)(3), Greenacre had a demonstrable "interest" in the Plaza necessitating protection and its involvement in the litigation was required to "render complete relief," pursuant to MCR 2.205(A). The trial court did not abuse its discretion by granting the motion to intervene.

---

circumstances, a subsequent event has made it impossible for this Court to grant relief on this aspect of plaintiffs' claim.

In Docket No. 340851, we reverse and remand to the trial court for further proceedings in accordance with this opinion. In Docket No. 341923, we affirm the trial court's ruling permitting Greenacre to intervene, but decline to rule on the remaining issue regarding the sale of the Plaza because the issue is moot. Neither party may tax costs, as neither has prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly