# STATE OF MICHIGAN

# COURT OF APPEALS

LANSING PARKVIEW, LLC,

    Plaintiff/Counter-Defendant-
    Appellee,

v

K2M GROUP, LLC and DON L. KESKEY,

    Defendants/Counter
    Plaintiffs/Third-Party Plaintiffs-
    Appellants,

and

ROBERT REID and JOEL I. FERGUSON,

    Third-Party Defendants-Appellees.

UNPUBLISHED
March 23, 2017

No. 328507
Ingham Circuit Court
LC No. 13-000723-CK

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

  Defendants K2M Group, LLC and Don Keskey (hereinafter jointly referred to as defendants) appeal as of right from a judgment entered by the trial court in favor of plaintiff Lansing Parkview, LLC[1] in the amount of $173,496.90, plus attorney fees and costs. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

  Third-party defendant Joel I. Ferguson is the sole member of plaintiff, which owned the property at 505 N. Capitol Avenue in Lansing that is the subject of this case. Keskey is the sole member of K2M Group.[2]

---

[1] The trial court had previously granted summary disposition in favor of plaintiff on its claims of breach of contract and breach of personal guarantee, and on each of defendants' claims raised in their counterclaim with the exception of their claim for promissory estoppel. A bench trial on the promissory estoppel claim resulted in a directed verdict in favor of plaintiff.

-1-

On June 21, 2006, plaintiff and defendants entered into an 18-month lease for the entire 20,000 square foot building and 30 parking spaces on the property at a monthly lease rate of $8,600. The lease provided that defendants would pay for all of the operating expenses during the lease term including the property taxes, insurance, maintenance, and utilities. Simultaneous with entering into the lease, the parties entered into an option to purchase the property for $1,250,000 at any time during the lease period. The option provided for a payment by defendants of $250,000 as "Option Money" upon execution of the option "as a non-refundable option payment" that would be applied as a credit against the sales price if defendants exercised the option and purchased the property.

Defendants exercised several extensions of both the lease and the option to purchase and, on June 30, 2008, the parties executed an addendum to the lease and to the option to purchase that extended the terms of both until June 30, 2009.[3] On June 10, 2009, the parties executed a "Third Addendum to Lease" that extended the terms of the lease to December 31, 2010, and also executed an "Addendum to Option to Purchase" that extended the time for exercise of the option until December 31, 2010. At that time, however, defendants were in default under the terms of the lease for failing to make lease payments in accordance with the term of the lease and for non-payment of property taxes. Defendants agreed to pay the amount of deferred rent and to reimburse plaintiff for unpaid property taxes on or before July 15, 2009.

On March 29, 2010, plaintiff sent defendants a letter indicating that $107,988.68 was then due and that plaintiff would consider entering into an agreement for leasing a portion of the building and five parking spaces for $4,000 per month with plaintiff having responsibility for paying all utilities, building insurance, and general maintenance. The proposal also included a requirement that defendants enter into a promissory note payable to plaintiff and a guarantee for all delinquent amounts due under the lease.

On August 6, 2010, the parties entered into a new lease and a new option to purchase, effective May 1, 2010 and terminating October 31, 2011. The new lease provided that plaintiff could cancel the lease if plaintiff sold the property or leased the property to another party. The new lease included a provision for holding over on a month to month basis for 115% of the rent charged during the period of the new lease. The new option included an amortization schedule that allowed for a credit of $250,000 at the time of closing for the initial option payment and allowed rent credits according to a formula from the time of the first lease on June 21, 2006, through the date of exercise of the option. Thus, the purchase price of $1,250,000 provided in the option would be reduced to $863,265.13 on May 1, 2010, if the option was exercised. The new option provided that the option could not be extended except by written agreement of both plaintiff and defendants, and provided that "[t]his represents the entire agreement between the Lessor and Lessee except for a Lease Agreement and Promissory Note given by Lessee to Lessor of even date, and supersedes or replaces all prior agreements, or understandings, either written or oral."

---

[2] Third-party defendant Robert Reid is an independent commercial real estate agent.

[3] The addendum to the option also revised the amortization schedule.

The new lease expired on October 31, 2011. Plaintiff offered to extend the lease from November 1, 2011, until April 30, 2013, and proposed an extension of the promissory note until April 1, 2013. Plaintiff did not offer to extend the option to purchase. Defendants did not agree to execute an extension of the lease or the amended promissory note and, consequently, became a month-to-month tenant as of November 1, 2011. On August 28, 2012, plaintiff served a notice to quit to recover possession of the property because defendants were delinquent in the payment of rent under the new lease and were in default in making payments due under the promissory note. Defendants surrendered possession of the property on September 26, 2012.

On January 23, 2013, plaintiff sent written notice of default under the May 1, 2010 promissory note and guarantee and provided a 15-day period to cure the default by paying the total amount due of $152,159.56.[4] On May 29, 2013, plaintiff provided written notice of default under the May 1, 2010 lease, the May 1, 2010 promissory note, and the May 1, 2010 guarantee, and provided a 15-day period to cure the default by the payment of $159,951.69.[5]

On July 1, 2013, plaintiff filed a complaint against defendants for breach of contract. Plaintiff sought a judgment of $130,990.26 as the unpaid principal under the promissory note and $12,000 as the unpaid rent under the lease plus interest, late payment fees, costs, and attorney fees incurred as a result of the default. Defendants filed a counter-complaint/third party complaint. The essence of the counter-complaint was that

> [w]hile the transactional documents were styled as a Lease and Purchase Option, the transaction was represented by Lansing Parkview and his agent as a means to complete the purchase of the property when financing or refinancing could be obtained by K2M Group. Seller . . . represented that this approach was necessary because Lansing Parkview's (Seller) mortgage had a Due on Sale clause, making Lansing Parkview's existing mortgage immediately due and payable if an immediate sale were undertaken. . . . The sale transaction provided for a sale price for the property of $1,250,000, and a down payment deposit of $250,000 which K2M Group paid at closing on June 21, 2006. The agreements also provided for monthly payments of $8,600 by K2M Group to Lansing Parkview, which represented monthly payments toward **both** principal and interest, according to a multi-year amortization table attached to the Lease/Option Agreement. . . . In addition, K2M Group then took full possession and on-site management of the property, and paid all management, operating, repair, maintenance and improvement costs, property taxes, insurance, and all other costs

---

[4] The amount consisted of the principal balance of $130,990.26 due under the promissory note, $12,000 for rent from July 1, 2012, to September 1, 2012, and 6% interest from November 1, 2011, to December 31, 2012.

[5] The amount consisted of the principal balance of $130,990.26 due under the promissory note, interest on the note at 6% in the amount of $12,441.43, $12,000 for rent from July 1, 2012 to September 1, 2012, 10% interest on the rent in the amount of $800, and a 4% late payment penalty on the rent in the amount of $480.

associated with the Property for the remaining portion of 2006, all of 2007 and 2008, and most of 2009.

Defendants asserted that plaintiff had orally represented from the inception of the 2006 lease and option to purchase that "the overall transaction involved a purchase of the Property but would be structured on an on-going basis as a Lease/Option to Purchase because of the existence of a Due-on-Sale clause in Lansing Parkview's or Joel Ferguson's mortgage on the property." They alleged that the parties did not intend for a lease and option to purchase but, rather, a purchase of the property as demonstrated by the "down payment" and the amortization tables attached to the June 21, 2006 lease and option to purchase, the subsequent addendums to the June 21, 2006 lease, and the subsequent extensions of the June 21, 2006 option to purchase. Defendants alleged fraud in the inducement, promissory estoppel, breach of contract and warranty of good faith and fair dealing, unjust enrichment, tortious interference with contract, and breach of constructive partnership.

The trial court granted summary disposition under MCR 2.116(C)(9) in favor of plaintiff on its claims of breach of contract and breach of personal guarantee, and under MCR 2.116(C)(8) and (9) on each of defendants' counterclaims with the exception of defendants' claim of promissory estoppel. A bench trial on defendants' claim of promissory estoppel resulted in a directed verdict in favor of plaintiff. The trial court entered a judgment against defendants in the amount of $173,496.60, plus costs and fees.

## II. STATUTE OF FRAUDS

Defendants argue that the trial court erred in holding that the statute of frauds barred their claims under the option agreement. "An option is basically an agreement by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time." *Oshtemo Twp v Kalamazoo*, 77 Mich App 33, 37; 257 NW2d 260 (1977).[6] Defendants argued below that the statute of frauds did not apply to an option to purchase. The trial court agreed, finding that an option contract does not create an interest in land, citing *Oshtemo Twp*, 77 Mich App at 37, and is therefore not subject to the statute of frauds, citing *Marina Bay Condominiums, Inc v Schlegel*, 167 Mich App 602, 607; 423 NW2d 284 (1988). Defendants' argument is, therefore, misplaced.

Within this issue, defendants raise a number of issues relating to contract interpretation, presumably because the trial court quoted from the option to purchase when ruling on the statute of frauds issue. "It is well established that this Court will not ordinarily review questions not separately stated in the statement of the questions presented for review" as "[t]he court rules require that a brief contain a 'statement of questions involved.' " *Rowe v Montgomery Ward &*

---

[6] With respect to the statute of frauds, the trial court properly found that the 2006 and 2010 lease agreements, which were reduced to writing and set forth an 18-month lease term, satisfied the statute of frauds. MCL 566.106; MCL 566.108.

*Co, Inc*, 437 Mich 627, 717 n 98; 473 NW2d 268 (1991). Because these issues are not contained in defendants' questions presented, we decline to address the claims of error.

## III. PROMISSORY ESTOPPEL

Defendants argue that the trial court abused its discretion by granting a directed verdict in favor of plaintiff on defendants' promissory estoppel claim. This Court reviews de novo a trial court's decision to direct a verdict. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). "When evaluating a motion for a directed verdict, a court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party." *Id.* "Directed verdicts are appropriate only when no factual question exists upon which reasonable minds may differ." *Id.* The applicability of a legal doctrine, such as promissory estoppel, to the motion presents a question of law also subject to de novo review. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). However, the trial court's factual findings underlying its determinations are reviewed for clear error. MCR 2.613(C).

Under the doctrine of promissory estoppel, courts may enforce a contract in equity if "there was a promise, the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, the promisee did in fact rely on the promise by acting in accordance with its terms, and [the] promise must be enforced to avoid injustice." *Crown Technology Park v D & N Bank, FSB*, 242 Mich App 538, 548-549; 619 NW2d 66 (2000) (ordinals omitted). However, courts will impose contracts in equity only if there is no express contract governing the subject matter of the controversy. *Martin v East Lansing Sch Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992).

The June 21, 2006 option to purchase was a valid written contract governing the subject matter of the controversy and expressly provided that the option to purchase could be "exercised at any time during the Lease period and ending December 31, 2007, with the right to extend . . . for one additional 6 month period ending June 30, 2008." The option also provided that "This Agreement may not be extended except by written agreement of both Lessor and Lessee." Plaintiff and defendants entered into subsequent written addendums to the option to purchase that, ultimately, extended the time for exercise of the option until December 31, 2010, and retained all of the other terms of the original option to purchase except as modified in the addendums, including the provision that the option to purchase could not be extended except by written agreement of both plaintiff and defendants. The options also contained integration clauses, which are conclusive evidence that a contract is complete. *UAW-GM Human Resource Ctr v KSL Recreation Group*, 228 Mich App 486, 502; 579 NW2d 411 (1998). Under these circumstances, where an express contract governed the subject matter in controversy, the trial court did not err by refusing to grant plaintiff equitable relief under the doctrine of promissory estoppel.[7]

---

[7] Further, defendants were unable to identify any promise purportedly made by plaintiff.

## IV. EQUITABLE CLAIMS

Defendants next argue that the trial court erred by granting summary disposition of their equitable claims. We review de novo a trial court's ruling on a motion for summary disposition. *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010).

### A. CONTRIBUTION

Defendants first claim that the trial court erred by granting summary disposition of their claim for contribution. They simply assert that the Supreme Court's decision in *Tkachik v Mandeville*, 487 Mich 38; 790 NW2d 260 (2010)[8] "discussed the application of equitable principles that justify <u>contribution and restitution relief</u> claimed herein." Without any analysis of the decision or application of the law to the facts in this case, defendants announce that "the application of said equitable powers and remedies must necessarily be based upon the facts and circumstances in each case." They have failed to adequately brief the issue. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004).

### B. PARTIAL PERFORMANCE

Defendants next assert that their claims are supported by the doctrine of partial performance. Under the doctrine of partial performance,

> If one party to an *oral* contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute [of frauds], equity will regard the contract as removed from the operation of the statute. The contract to be enforced must be established by clear and convincing evidence. [*Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942) (citations omitted; emphasis added).]

The present case involves a written contract as opposed to an oral contract. Further, the trial court did not invoke the statute of frauds and, therefore, this argument presents a non-issue.

### C. FRAUD IN THE INDUCEMENT

---

[8] *Tkachik* involved a joint contribution between a husband and wife in a tenancy by the entirety and was not based upon a written contract between two parties. *Tkachik*, 487 Mich at 40. The amounts paid by defendants were based upon a lease negotiated for an office building under full lease for 4 years and partial lease for 2 years. Defendants' obligations were controlled by the terms of an unambiguous contract.

Next, defendants argue that plaintiff fraudulently induced them into entering into the lease agreement and option to purchase by misrepresenting future actions. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639-640; 534 NW2d 217 (1995) (citations omitted). To establish fraud in the inducement, it must be shown that

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that is was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003) (quotation marks and citation omitted).]

Defendants have not identified any representation by plaintiff that was false and that resulted in damages. Defendants rely on what they call "plaintiff's course of conduct," which they define as plaintiff's granting of a number of extensions of the option to purchase, as well as the amortization tables, and assert that they are entitled to continuing extensions of the option to purchase. This reliance, however, is not evidence of fraud in the inducement. The written documents in this case clearly state that any extension of the option to purchase was subject to the written agreement of both parties. The trial court properly granted summary disposition of the claim for fraud in the inducement.

## D. BREACH OF CONTRACT AND WARRANTY OF GOOD FAITH AND FAIR DEALING

Defendants cite general case law regarding breach of contract, construction of a contract, and modification of a contract, and then simply announce, without any factual allegations and without application of the law to the facts, that "[t]he facts and course of conduct in this case, and the documents, support [defendants'] claims herein. Recent cases indicate that good faith and fair dealing are important elements in resolving cases such as this." We consider this issue abandoned. *Thompson*, 261 Mich App at 356.

## E. UNJUST ENRICHMENT

Defendants contend that plaintiff was unjustly enriched because defendants "incurred substantial costs and responsibilities for the property for 6 years." "Unjust enrichment" is defined as the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected. *Barber v SMH (US) Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). "[A] contract cannot be implied in law while an express contract covering the same subject matter is in force between the parties." *HJ Tucker and Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 573; 595 NW2d 176 (1999). When the elements of unjust enrichment have been shown, "the law operates to imply a contract in order to prevent unjust enrichment." *Barber*, 202 Mich App at 375. But, under Michigan law,

"a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

Defendants had sole possession of the property in exchange for the payment of rent and operating expenses under the lease. The lease agreement expressly required a monthly rent of $8,600 for possession of the entire property, and clearly provided that defendants were responsible for all of the operating costs. The trial court did not err by granting summary disposition of the claim for unjust enrichment.

## F. TORTIOUS INTERFERENCE WITH A CONTRACT

Defendants argue that plaintiff and third-party defendants Ferguson and Reid intentionally interfered with defendants' completion of the "purchase transaction." They merely assert that plaintiff interfered with plaintiff's own contract with defendants. Defendants do not cite any authority in support of their argument and, therefore, this issue is abandoned. *Thompson*, 261 Mich App at 356.

## G. CONSUMER PROTECTION ACT

Lastly, defendants did not plead a cause of action for violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, in their first amended complaint, and therefore this issue was not raised in either the motion for summary disposition or motion for directed verdict. There is nothing for this Court to review.

## V. REMOVAL OF ATTORNEY OF RECORD

Defendants argue that the trial court wrongfully required Keskey to withdraw as attorney of record for purposes of the trial. We review a preserved claim of constitutional error de novo. *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004).

The trial court, sua sponte, removed Keskey as attorney of record because he was also a witness. MRPC 3.7(a) precludes a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness except" where (1) the testimony relates to uncontested issues, (2) the testimony relates to the nature and value of legal services rendered in the case, or (3) disqualification of the lawyer would work substantial hardship on the client. The purpose of the rule is to prevent any problems that would arise from a lawyer having to argue the credibility and effect of his own testimony, to prevent prejudice to the opposing party that might arise therefrom, and to prevent prejudice to the client if the lawyer is called as an adverse witness. *Smith v Arc-Mation, Inc*, 402 Mich 115, 119; 261 NW2d 713 (1978); *Kubiak v Hurr,* 143 Mich App 465, 471, 475; 372 NW2d 341 (1985); Comment to MRPC 3.7.

Our Constitution, Const 1963, art 1, § 13, however, guarantees citizens the right to appear pro per, and no distinction is made between lawyers and other citizens with respect to that right. When the exclusion of attorney testimony would work a substantial hardship on a party, MRPC 3.7 calls for a balancing of the rights of the respective parties. Plaintiff's counsel did not bring a motion to disqualify Keskey and expressed no concern about which of the "5 attorneys of

record" tried the case. Keskey, on the other hand, argued that it would present a substantial hardship for any of the other attorneys of record to try the case with short notice because the intent had always been for Keskey to try the case and none of the other attorneys of record were prepared to try the case. Even assuming, however, that the trial court abused its discretion by refusing to allow Keskey to try the case, defendants have failed to identify any prejudice resulting from the trial court's exclusion of Keskey from representing himself. Thus, any error was harmless.

## VI. MOTION TO FILE A SECOND AMENDED COMPLAINT

Defendants argue that the trial court abused its discretion by denying defendants' motion to file a second amended counter-complaint. A trial court's decision to grant or deny leave to amend a pleading is reviewed for an abuse of discretion, and this Court will only reverse if the court's ruling causes an injustice. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 400-401; 729 NW2d 277 (2006).

Specifically, defendants also argue that the trial court failed to articulate any reason for denying defendants' motion to file a second amended complaint and failed to require plaintiff to make any oral or written response to the motion. MCR 2.118(A)(1) provides that "a party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party." After this 14-day window has expired, "a party may amend a pleading only by leave of court or by written consent of the adverse party." MCR 2.118(A)(2). Leave to amend "shall be freely given when justice so requires." *Id.* A motion to amend a complaint "should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the part of the movant, a repeated failure to cure deficiencies in the pleadings, undue prejudice to the opposing party by virtue of allowing the amendment, or the futility of amendment." *Boylan v Fifty Eight LLC*, 289 Mich App 709, 728; 808 NW2d 277 (2010).

Here, defendants filed the motion to file a second amended complaint on February 23, 2015, the day before trial was to begin. Before trial commenced the following day, plaintiff's counsel indicated that he had not seen the email and attached motion to amend that had been sent to him at 8:57 p.m. the previous night until that morning. He also noted that he had spoken to defendants' counsel the night before and counsel never mentioned that he had filed a motion. He argued that the motion was untimely, that there was no good cause for filing the motion at such a late date, and that plaintiff would be prejudiced if the amendment were allowed.

The trial court ruled as follows:

> My amended opinion and order was signed by this court on August 8, 2014. . . . Today is the 24th of February, 2015; so six months have gone by in which this work should have been done.

> You also were in mediation with Paula Manderfield, and I know she spent considerable time with all of you. . . . There were ample opportunities to amend the complaint. I certainly would have liberally granted your request at any of those times.

We were here Thursday, Friday, Monday. Without proper notice on Friday and Monday because of these emergency issues that emerged. I listened to everybody's arguments. Here we are at trial.

Now I have this motion to amend at the last minute. Justice has to be for both sides. To delay this trial any longer is not justice. This request is denied. We're going to trial now. There is no good reason to delay this. This is not an issue where counsel is unrepresented—I'm sorry—well, he was counsel, he's not anymore, defendant is an attorney but had excellent representation by Clark Hill and by you, Mr. Coyer. I know defendant wanted to take the lead himself but he also had opportunity to consult with attorneys to review pleadings, to make group decisions, to comb through the law. These decisions should have been made a long time ago. This amendment was completely foreseeable, if that's the right one to take, not on the morning of trial. I understand in some situations this might be acceptable, but not today and not in this case. We're moving forward. Your motion is denied.

Thus, contrary to defendants' assertion, plaintiff did respond to defendants' motion, and the trial court did make findings when ruling on the motion. The court denied the motion on the ground of undue delay. Defendants have not challenged this finding and, therefore, have failed to demonstrate that the trial court abused its discretion. And, defendants have not addressed the merits of their proposed amendment, and therefore, even assuming that the trial court abused its discretion by denying the amendment, they have failed to show that the trial court's ruling caused an injustice.

Affirmed.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-10-