*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES HAMPTON,

        Plaintiff-Appellant,

v

MICHIGAN BELL TELEPHONE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 26, 2019

No. 342286
Genesee Circuit Court
LC No. 16-107442-CD

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff, James Hampton, appeals as of right a trial court order granting summary disposition in favor of his former employer defendant, Michigan Bell Telephone Company, pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff commenced this action alleging that defendant, his former employer, engaged in race-based discrimination and retaliation in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. The trial court granted summary disposition in favor of defendant after concluding that there was no genuine issue of material fact to support that plaintiff's termination was (1) racially motivated or (2) in retaliation for engaging in protected activity.

## I. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006).

## II. RACE-BASED DISCRIMINATION

In his amended complaint, plaintiff alleged that defendant discriminated against him on the basis of race and in violation of the ELCRA. MCL 37.2202(1)(a) provides, in relevant part, as follows:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"In some discrimination cases, the plaintiff is able to produce direct evidence of racial bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Direct evidence of racial discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quotation marks and citation omitted).

"In many cases, however, no direct evidence of impermissible bias can be located." *Id*. In these cases, "[i]n order to avoid summary disposition, the plaintiff must then proceed through the familiar steps set forth in [*McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)]." *Id*. The *McDonnell Douglas* framework "allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Id*. (quotation marks and citations omitted). Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination by presenting evidence that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and, (4) the adverse action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 463.

If a plaintiff establishes a prima facie case of discrimination, "a presumption of discrimination arises." *Id*. (quotation marks and citation omitted). However, summary disposition is not necessarily precluded; rather, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id*. at 464. "If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away." *Id*. at 465. Then, in order to survive a motion for summary disposition, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. (quotation marks and citations omitted). Specifically, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." *Id*. at 465-466 (quotation marks and citations omitted).

In this case, in responding to the motion for summary disposition, plaintiff did not allege, nor can he prove, direct evidence of discrimination. Applying the *McDonnell Douglas* burden

-2-

shifting analysis, it is undisputed that plaintiff established the first three elements of a prima facie case of race-based discrimination. Specifically, defendant does not dispute that plaintiff was a member of a protected class, that plaintiff suffered an adverse employment action when he was terminated, and that plaintiff was qualified for his former position. See *id*. at 463.

With respect to the fourth element, plaintiff contends that the termination occurred under circumstances giving rise to an inference of unlawful discrimination because following plaintiff's termination defendant hired a Caucasian manager to replace him. Plaintiff cites *Lytle v Malady (On Rehearing)*, 458 Mich 153, 177; 579 NW2d 906 (1998) in support of his position. In *Lytle*, the Michigan Supreme Court explained that in order to establish a prima facie case of age discrimination, the plaintiff was required to prove the following elements: "(1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) *she was replaced by a younger person*." *Id*. (emphasis added). See also *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 608; 886 NW2d 135 (2016) (noting that a plaintiff may show race discrimination by proving that the plaintiff was replaced by a person of another race *or* by using the "similarly situated" method). Plaintiff argues that in this case he can show that he was replaced with someone who was not a member of his protected class.

It is unclear who replaced plaintiff following his termination, and there was conflicting evidence whether defendant in fact hired a Caucasian male to replace plaintiff. However, viewing the evidence in a light most favorable to plaintiff, there was sufficient evidence regarding whether plaintiff's termination occurred under circumstances that gave rise to the inference of unlawful discrimination. See *id*.

Because plaintiff successfully set forth all four elements of a prima facie case of race-based discrimination, the burden shifted to defendant to "articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464. In this case, defendant satisfied this burden. John Clark, plaintiff's second-level manager, testified that he decided to terminate plaintiff because plaintiff recorded a meeting with plaintiff's first-level supervisor Sheri Balliet and Tim Schnorenberg, a union representative; shared the recording with another employee named Tera Dunning; and, lied to Dunning by accusing Schnorenberg of stating that he did not know whether to call Dunning a "he, she, or it." Clark also considered that plaintiff falsified company records by untruthfully representing that he had verified that a technician had a valid driver's license and that he verified that another technician's first aid kit was not expired. In addition, Clark testified that he considered "the bigger picture" of plaintiff's relationships with his peers and plaintiff's disruption of workplace relationships. Clark's testimony was a sufficient articulation of legitimate nondiscriminatory rationale to support his decision to terminate plaintiff.

Considering that defendant satisfied its burden to articulate a legitimate, nondiscriminatory reason for the termination, in order to avoid summary disposition plaintiff was required to show that there was a question of fact regarding whether defendant's rationale was a pretext for unlawful discrimination. See *id*. at 465-466. Pretext may be established by

-3-

(1) by showing that the reason(s) had no basis in fact, (2) if the reason(s) had a basis in fact, by showing that they were not actual factors motivating the decision, or (3) if the reason(s) were motivating factors, by showing that they were jointly insufficient to justify the decision. [*Meagher v Wayne State Univ*, 222 Mich App 700, 711-712; 565 NW2d 401 (1997).]

"However, the soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Id*.

In this case, plaintiff failed to cite evidence to create an issue of fact regarding whether defendant's proffered rationale for the termination was pretextual. Plaintiff argues that the racially disparaging remarks that defendant's employees made over the years created a question of fact regarding pretext in that the remarks show defendant's motivation. Plaintiff specifically cites a comment referring to Kwanzaa that one of his peers, Chris LaMarbe, allegedly made at a holiday party when plaintiff went to sign a holiday card for Balliet. However, this comment was remote in time to the termination, and LaMarbe had no input into plaintiff's termination. Similarly, plaintiff's argument that he was accused of "hitting on" elderly women was not evidence of pretext. There was no evidence this statement was racially motivated or that the person who made the statement had any input into plaintiff's termination. There is no evidence that any of plaintiff's superiors or anyone involved in the decision to terminate plaintiff made racially insensitive comments. In short, the stray remarks cited by plaintiff did not create a question of fact regarding pretext.

Plaintiff also argues that defendant treated him differently from other managers. Plaintiff argues that there was evidence that other first-level managers swore at employees, falsified certain forms, hid an accident, and had an improper sexual relationship with a subordinate. Plaintiff argues that none of these infractions led to termination. This argument lacks merit.

To prove disparate treatment, the United States Court of Appeals for the Sixth Circuit[1] has explained the follwoing:

It is fundamental that to make a comparison of a discrimination plaintiff's treatment [sic] to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards *and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it*. [*Mitchell v Toledo Hosp*, 964 F2d 577, 583 (CA 6, 1992) (citations omitted) (emphasis added).]

---

[1] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

In this case, there is no evidence to support that another first-level supervisor engaged in the same or similar conduct as plaintiff. As noted above, Clark testified that he decided to terminate plaintiff because plaintiff recorded a meeting with his supervisor and a union representative, provided the recording to an employee, and misrepresented what the union representative said. Clark also explained that plaintiff verified a subordinate's driver's license when the license was invalid and that plaintiff incorrectly verified that a first aid kit was not expired. In addition, Clark testified that he made his decision in the context of plaintiff's disruptive relationships with his peers and with the union. Plaintiff fails to cite evidence to show that another first-level supervisor engaged in similar conduct and had similar disruptive relationships with peers and with the union. As such, there is no evidence of disparate treatment, and plaintiff has failed to establish a genuine issue of material fact regarding pretext.

Plaintiff also argues that the trial court improperly relied on the "same group inference" when it granted the motion for summary disposition. Plaintiff is correct that the "same-group inference" is an impermissible reason to find that there was no discrimination. See, e.g., *Oncale v Sundowner Offshore Servs, Inc*, 523 US 75, 78; 118 S Ct 998; 140 L Ed 2d 201 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.") (quotation marks and citation omitted). However, in this case, the trial court's reference to Clark's race was limited and was not the central analysis of the trial court's reasoning. Instead, the trial court articulated why the evidence was insufficient to create an issue of material fact regarding pretext. Moreover, as previously discussed, based on the record evidence the trial court did not err in holding that there was no genuine issue of material fact regarding plaintiff's claim. Accordingly, the trial court did not err in granting summary disposition. See *Gleason v Mich Dep't of Trans*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

In sum, the trial court did not err in granting summary disposition in favor of defendant with respect to plaintiff's claim of race-based discrimination under the ELCRA.

## II. RETALIATION

Plaintiff argues the trial court erred in granting summary disposition with respect to his claim of unlawful retaliation.

Under the ELCRA, it is unlawful to "[r]etaliate or discriminate against a person because the person has opposed a violation of [the] act." MCL 37.2701(a). To establish a prima facie case of retaliation, a plaintiff must show:

> (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).]

In this case, plaintiff established the first three elements of a retaliation claim. Plaintiff engaged in protected activity when he filed Equal Employment Opportunity Commission complaints and commenced this lawsuit alleging race-based discrimination. In addition, defendant does not dispute that plaintiff served notice of this lawsuit before Clark terminated plaintiff. Therefore, defendant had notice of the protected activity. With respect to the third element, it is undisputed that defendant took an adverse employment action against plaintiff when defendant terminated plaintiff's employment.

With respect to the fourth element, "[a] plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence. Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions." *Shaw v Ecorse*, 283 Mich App 1, 14-15; 770 NW2d 31 (2009).

In this case, there was no direct evidence to establish a causal connection between the termination and the protected activity. Plaintiff's cites a specific e-mail as direct evidence of retaliation. However, the e-mail did not list plaintiff's protected activity as a reason for the termination. The e-mail did not refer to plaintiff filing an EEOC complaint or filing a complaint to commence this lawsuit. Similarly, plaintiff's argument that Balliet stated to him that she did not want to hear "things" from third parties was not direct evidence of discrimination. Balliet had no involvement in plaintiff's termination and there is no evidence that Clark was aware of Balliet's alleged statement. In short, there was no other direct evidence of retaliation.

"To establish causation using circumstantial evidence, the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. (quotation marks and citations omitted). Circumstantial evidence is "sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Id*.

In this case, there was insufficient evidence to allow a rational jury to infer that defendant's actions were motivated by retaliation. Although plaintiff was terminated less than two months after he filed the instant lawsuit, "such a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). Rather, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *Id*. Plaintiff fails to cite other evidence that would create a genuine issue of material fact regarding causation. Clark considered plaintiff's conduct in relation to the context of his overall tenure of employment. Clark explained that plaintiff had a history of undermining relationships with coworkers and union representatives. Although plaintiff contends that defendant treated other similarly situated managers differently, as previously discussed plaintiff

failed to cite evidence establishing that there were similarly situated managers who were treated differently. In sum, there was no genuine issue of material fact regarding causation. Therefore, the trial court did not err in granting summary disposition with respect to plaintiff's retaliation claim.

Affirmed.


/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto